UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| CYNTHIA ZOLANDZ, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br>v.<br><br>DEBT RECOVERY SOLUTIONS, LLC,<br><br>        Defendant. | Case No.: 20-cv-89<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Cynthia Zolandz is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes, namely a personal credit card debt.

5. Defendant Debt Recovery Solutions, LLC ("DRS") is a foreign limited liability company with its primary offices located at 6800 Jericho Turnpike, Suite 113E, Syosset, NY 11791.

6. DRS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. DRS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

8. DRS is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

9. On or around November 26, 20119, DRS mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "BUYERS HOLDING, LLC," with an "Original Creditor" listed as "CASH CENTRAL." A copy of this letter is attached to this complaint as Exhibit A.

10. Upon information and belief, the alleged debt referenced in Exhibit A was incurred as a result of a personal loan, which was used only for personal, family or household purposes.

11. Upon information and belief, Exhibit A is a form letter, generated by a computer, and with the information specific to Plaintiff inserted by the computer.

12. Upon information and belief, Exhibit A is a form debt collection letter, used by DRS to attempt to collect alleged debts.

13. Upon information and belief, Exhibit A is the first written communication DRS mailed to Plaintiff regarding this alleged debt.

14. Exhibit A includes the following representation which largely reflects the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors provide alleged debtors along with, or within five days of, the initial communication:

2

> The preceding information does not affect your rights set forth below:
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

15. <u>Exhibit A</u> also includes the following statement:

> We believe that if we work together we can find a way to resolve this debt. Therefore, we wanted to offer you a discounted offer of $360.50 to resolve this account. Upon clearance of your payment, this account will be considered resolved and closed.

16. <u>Exhibit A</u> states that DRS is "not obligated to renew these offers."

17. <u>Exhibit A</u> does not provide a settlement expiration date upon which the offer would need to be renewed.

18. Upon information and belief, the statement that DRS is "not obligated to renew these offers," is a material false, deceptive, and misleading statement.

19. In the absence of an expiration date, the unsophisticated consumer would understand a statement that the debt collector is "not obligated to renew this offer," to mean that DRS could, and would, rescind the settlement offer at any time and without notice.

20. Upon information and belief, the debtor can settle the account for $365.50, or less, at any time.

21. In order to preserve debt collectors' negotiating positions and prevent the settlement process from disintegrating, while still enforcing the congressional mandate prohibiting debt collectors from making false, deceptive, and misleading representations, the Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following

3

language: "We are not obligated to renew this offer." The word "obligated is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory v. RJM Acquisitions Funding L*, 505 F.3d 769, 775-76 (7th Cir. 2007).

22. While <u>Exhibit A</u> tracks this safe-harbor language, without an expiration date, the language does not have its intended effect.

23. Instead, where the debt collector states that it is not obligated to renew an offer but does not include an expiration date by which payment must be made, the unsophisticated consumer would understand the safe-harbor language to mean that the offer was subject to revocation.

24. The unsophisticated consumer may even believe that the law requires a debt collector to include the Seventh Circuit's safe-harbor language if it will rescind the offer.

25. Without an expiration date, the unsophisticated consumer would interpret a debt collector's statement that it is "not obligated to renew" as an implied threat to revoke the settlement offer at any time and without notice.

26. Where the Seventh Circuit prescribes safe-harbor language, this language is not "blessed" as generally acceptable---rather, the Seventh Circuit has made it clear that its safe-harbor language applies only in the specific "type" of case addressed in the opinion and that very language may, in fact, violate the FDCPA under other circumstances. *E.g., Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 371 (7th Cir. 2018) ("debt collectors cannot immunize themselves from FDCPA liability by blindly copying and pasting the *Miller* safe harbor language without regard for whether that language is accurate under the circumstances."); *Evory*, 505 F.3d at 775-76 ("we think the *present concern* can be adequately addressed …"); *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997) ("We commend this redaction as a safe harbor … for the kind of suit

4

Bartlett has brought and now won. The qualification 'for the kind of suit that Bartlett has brought and now won' is important. We are not certifying our letter against challenges based on other provisions of the statute; those provisions are not before us."); *see also O'Chaney v. Shapiro and Kreisman, LLC*, 2004 U.S. Dist LEXIS 5116, at *13 (N.D. Ill. Mar. 25, 2004) (rejecting the argument that a debt collector could avoid liability for use of safe harbor language where the Seventh Circuit expressly limited the reach of the language to different claims).

27. The safe-harbor language used in Exhibit A was created specifically for cases where a debt collection letter stated a settlement date certain. Without a date certain, the language is false, deceptive, misleading, and confusing, and gives rise to FDCPA liability. *E.g., Al v. Van Ru Credit Corp.*, 2018 U.S. Dist. LEXIS 70321, at *9 (E.D. Wis. Apr. 26, 2018).

28. Moreover, DRS's failure to provide an expiration date for its settlement offer is a material misrepresentation because it misleads the unsophisticated consumer about a material term of the settlement offer. *Evory*, 505 F.3d at 775-76; *see Smith v. Nat'l Enter. Sys., Inc.*, 2017 U.S. Dist. LEXIS 47701, *13 (W.D. Okla. Mar. 30, 2017) (because debt collector's purported time-sensitive settlement offer included an obviously misprinted expiration date that had already passed, "any consumer receiving [it] would be left to wonder about a material term of the offer, that is, the deadline for acceptance.").

29. The unsophisticated consumer, not knowing when the settlement offer expired, would feel intimidated into paying. *Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 (7th Cir. 2009) ("Confusing language in a dunning letter can have an intimidating effect by making the recipient feel that he is in over his head and had better pay up rather than question the demand for payment.").

5

Case 2:20-cv-00089-JPS   Filed 01/20/20   Page 5 of 15   Document 1

30. Moreover, providing the settlement offer alongside the validation notice contradicts and overshadows the consumer's validation rights.

31. The settlement offer in Exhibit A is confusing to the unsophisticated consumer because it requires that the consumer tender a payment within the validation period or shortly thereafter, but does not explain how the validation notice and settlement "deadline" fit together. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

32. The unsophisticated consumer, unsure when the settlement offer in Exhibit A expires, would feel compelled to make a settlement payment as soon as possible, and during the validation period, to ensure the settlement offer had not expired without notice prior to her tendering of payment. Thus, there is an apparent contradiction between the settlement offer and the validation notice.

33. The unsophisticated consumer would be confused about whether the settlement offer in Exhibit A would require her to forego her rights to validate the debt.

34. The unsophisticated consumer would not know whether requesting verification of the debt would be interpreted as a rejection of the settlement offer.

35. The plain language of Exhibit A is unclear as to how the debt collector would proceed in the event that the consumer mailed a dispute along with a payment that was intended to accept the settlement offer in the case that the debt could be verified.

36. Where a consumer mailed a dispute along with a payment that was intended to accept a settlement offer in Exhibit A, under the terms of Exhibit A, the debt collector might:

  a. Hold the payment in escrow pending verification of the debt;

  b. Interpret the payment as an accord and satisfaction and settlement in full that contractually bars the consumer from requesting verification of the debt; or

  c. Send the payment back to the consumer pending verification of the debt, in which case the consumer may no longer be able to settle the debt because the offer would have expired while the debt collector was obtaining verification.

37. Where a consumer mails a dispute along with a payment that was intended to accept a settlement offer with an impending expiration date, whether the FDCPA requires a debt collector to proceed along any of the above paths is an open question in the Seventh Circuit. *See Bailey v. TRW Receivables Management Services, Inc.*, 1990 U.S. Dist. LEXIS 19638, *7-8 (D. Haw. Aug. 16, 1990) ("There is nothing in the statute which indicates that a debt collector is not required to provide verification where a consumer requests it after paying the debt.").

38. Whether accepting payment, or even holding payment pending verification, is a "further attempt to collect the debt" is an open question in the Seventh Circuit. *See Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234, 1243 (D. Haw. Feb. 5, 2002) ("Because the debt collector in *Bailey* had already collected the debt, there was no collection to 'cease' pending validation. In *Bailey*, keeping the consumer's money was tantamount to continuing collection activity.").

39. The unsophisticated consumer would be confused as to whether she had effectively exercised her validation rights by sending a payment along with a dispute letter.

40. The unsophisticated consumer may unwittingly reject a settlement offer by tendering the settlement payment along with her dispute letter. If the debt collector treated the acceptance of a settlement offer as a continuing attempt to collect a debt, *see Sambor*, 183 F. Supp. 2d at 1243, the debt collector would need to return the settlement payment pending verification of the debt.

7

41. Because the debt collector may be legally obligated to return the consumer's settlement payment pending verification of the debt, the expiration date would lapse before the consumer had effectively made the settlement payment. By the time the debt collector verified the debt, the consumer would have missed her chance to settle the debt even though she attempted to tender a payment before the expiration date.

42. Moreover, the unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offer in Exhibit A.

43. The consumer needs time to process the information contained in an initial debt collection letter before deciding whether to dispute, pay or take other action. This is the point of the 30 day period in 15 U.S.C. 1692g(a). *See Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 95 (2d Cir. 2008) ("the aim of § 1692g is to provide a period for the recipient of a collection letter to consider her options.").

44. Prior to deciding whether to dispute a debt, a consumer may have to sort through personal records and/or memories to try to remember if the debt might be legitimate. They may not recognize the creditor – debts are freely assignable and corporations, especially banks, often change names.

45. The § 1692g validation period lasts for 30 days. It is the consumer's right to *request* verification until the end of the thirty day period. If the request is not made until the end of the thirty day period, the verification request would not be processed, researched by the creditor, and returned to the consumer until long after settlement offer payment deadline has expired. The consumer would be left with no time to review the verification and determine whether to accept the settlement offer.

46. The unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offers in Exhibit A. The unsophisticated consumer would believe that the settlement offer would expire before the debt collector provides verification and would be left with little or no time to review the verification and determine whether to accept the settlement offer.

47. The effect of the settlement offer in the initial written debt communication is to discourage or prevent consumers from exercising their validation rights.

48. Defendant's "explanatory language" in Exhibit A, *see, e.g.*, *Bartlett*, 128 F.3d 497, 501-02 (7th Cir. 1997), does not clarify how---or even whether---a debtor may both dispute the debt and take advantage of the settlement.

49. Any explanatory language should make clear whether a dispute will extend the settlement offer while the debt collector is in the process of complying with its obligation to verify the debt.

50. Plaintiff was misled and confused by Exhibit A.

51. The unsophisticated consumer would be misled and confused by Exhibit A.

### *The FDCPA*

52. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist.

LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes ... do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill.

July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

53. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

54. Misrepresentations of the character, amount, or legal status of any debt and misrepresentations as to the proper party to pay, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.*, 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Encore Receivable Management, Inc.*, 18-cv-1484-WED, 2019 U.S. Dist. LEXIS 134377 (E.D. Wis. Aug. 9. 2019); *Richardson v.*

11

*Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

55. 15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

56. 15 U.S.C. § 1692e(5) specifically prohibits debt collectors from making a "threat to take any action that cannot legally be taken or that is not intended to be taken."

57. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

58. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

59. 15 U.S.C. § 1692g(b) states, in part:

(b) **Disputed debts**

…

Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

## COUNT I – FDCPA

60. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

61. Exhibit A includes an offer that is misleading as to the amount necessary to effectuate the settlement and when the offer may expire.

62. By including a settlement offer without an expiration date alongside the statement "[w]e are not obligated to renew this offer," Exhibit A falsely threatens to rescind such settlement offer at any time.

63. Defendant violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and 1692f.

## COUNT II – FDCPA

64. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

65. By including a settlement offer which the unsophisticated consumer would understand could be rescinded at any time, Exhibit A overshadowed the validation notice.

66. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f, and 1692g(b).

## CLASS ALLEGATIONS

67. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt for personal, family or

13

household purposes, (d) between January 20, 2019 and January 20, 2020, inclusive, (e) that was not returned by the postal service.

68. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

69. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA.

70. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

71. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

72. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## **JURY DEMAND**

73. Plaintiff hereby demands a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: January 20, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000 | (414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com

15